ORIGINAL

# In the United States Court of Federal Claims

No. 13-759 C
Filed: April 4, 2014
**NOT TO BE PUBLISHED**

FILED

APR   4 2014

U.S. COURT OF
FEDERAL CLAIMS

```
*****************************************
                                         *
                                         *
RALPH TAYLOR,                            *
                                         *
        Plaintiff, pro se,               *
                                         *
v.                                       *
                                         *
THE UNITED STATES,                       *
                                         *
        Defendant.                       *
                                         *
                                         *
*****************************************
```

**Ralph W. Taylor**, Terre Haute, Indiana, Plaintiff, *pro se*.

**Kenneth D. Woodrow**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

## MEMORANDUM OPINION AND FINAL ORDER

**BRADEN**, *Judge*.

## I.    RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY.[1]

On October 6, 2011, Plaintiff sent a "Request For Statement Of Account" to certain "Respondents," including the United States Secretary of Treasury. Compl. 10–11 (Ex. 1). The Complaint and the October 6, 2011 Request reference an Order issued by the United States

---

[1] The relevant facts discussed herein were derived from: Plaintiff's September 30, 2013 Complaint and the attached Exhibit containing eleven separate documents, most of which are letters signed by Plaintiff and addressed to various "Respondents," including the United States Secretary of the Treasury; Plaintiff's February 7, 2014 Response to the Government's Motion To Dismiss; and, *United States v. Taylor*, 196 F.3d 854 (7th Cir. 1999), *cert. denied*, 529 U.S. 1081 (2000).

District Court for the Southern District of Indiana, Case No. 96-CR-0132-01.[2]  Comp. ¶ 6; *see also* Compl. 10–11 (Ex. 1) (10/6/11 Request).  The Request seeks verification that all "obligations" related to his criminal conviction have been "satisfied, reconciled, and completely settled, including all penal obligations, and sums, fines, fees, costs and supervised release." Compl. 10 (Ex. 1).

On November 3, 2011, Plaintiff also sent certain "Respondents" a letter "affirm[ing] and attest[ing that since] no or non-response has been forthcoming" this fact confirmed his "account record [was] absolutely correct and accurate" and his criminal conviction satisfied.  Compl. 11–13 (Ex. 1).  On November 28, 2011, Plaintiff also sent a Certification Of Non-Response letter to certain "Respondents" in which he essentially repeated these statements and his right to a remedy.  Compl. 14 (Ex. 1).

On August 3, 2012, Plaintiff signed and sent a Form OMB No. 1105-0008, Claim For Damage, Injury or Death, to Richard Schott, Office of the Regional Tort Division, Kansas City, Kansas.[3]  Compl. Ex. 1 at 8.  On August 13, 2012, Plaintiff also sent a letter to Mr. Schott regarding Plaintiff's "Notice Of Tort Claim," in which he names four tortfeasors.  Compl. 8 (Ex. 1).  None of these individuals appear in the list of "Respondents" in the aforementioned documents.  *Compare* Compl. 8 (Ex. 1), *with* Compl. 10–11 (Ex. 1).

On September 25, 2012, Plaintiff also signed an "Invoice" for tort damages in the amount of $405,388,872 and addressed that Invoice to Mr. Schott.  Compl. 7, 17 (Ex. 1).  The Invoice is styled "Memorandum of Record, Account/Claims Reference No. RL71132-3 [TRT-NCR-2012-05672]," and lists Plaintiff as the "Account Creditor," and the four tortfeasors identified in the August 13, 2012 Notice Of Tort Claim as "Account Debtors."  Compl. 7 (Ex. 1).  Plaintiff enclosed a copy of the "Invoice" for Ms. Joyce Zoldak, Associate General Counsel for the Federal Bureau of Prisons.  Compl. 17 (Ex. 1).  On November 19, 2012, Plaintiff sent a "past due" letter to Ms. Zoldak.  Compl. 18 (Ex. 1).

On December 7, 2012, Plaintiff sent a letter to Brent M. Phipps, Paralegal for the United States Department of Justice, Civil Division Tort Branch, providing "notice for claim of certified true copies of all insurance agreements and/or other bonding information" for all tortfeasors. Compl. 19 (Ex. 1).  On February 11, 2013, Plaintiff "assigned" the September 25, 2012 Invoice to "Timothy Geithner, United States Secretary of the Treasury (an authorized agent of the United States)" as a "setoff" of the costs of Plaintiff's prison sentence.  Compl. ¶ 4; Compl. 5 (Ex. 1). On March 29, 2013, Plaintiff sent the Secretary of the Treasury a second letter informing him of the "breach of [his] fiduciary duty" (by not acting on the February 11, 2013 Assignment within

---

[2] Plaintiff was convicted for conspiracy to distribute cocaine, committing money laundering, conspiracy to commit money laundering, and engaging in an unlawful money transaction in Terre Haute, Indiana. *See Taylor*, 196 F.3d at 859.  Plaintiff also was sentenced to ten years supervised release and a fine of $25,000. *Id.*

[3] Mr. Schott is identified as the Regional Counsel for the Federal Bureau of Prisons in Kansas City in an Exhibit accompanying the Complaint.  Compl. 17 (Ex. 1).

thirty-one days) and requesting that proceeds of the Invoice be returned to Plaintiff within three days. Compl. 20 (Ex. 1).

On September 30, 2013, Plaintiff filed a Complaint in the United States Court of Federal Claims seeking a $405,388,872 payment for the September 25, 2012 Invoice that was "assigned" to the United States Department of the Treasury and specific performance of obligations in that assignment agreement. Compl. ¶ 15.

The Complaint also alleges that the September 25, 2012 Invoice is for tort damages owed to Plaintiff by the Government. Compl. ¶ 15. The basis for the damages apparently stems from actions of either four or eighteen tortfeasors[4] who are federal government employees; namely, prison officials overseeing the federal prison that currently houses Plaintiff. Compl. 7–9 (Ex. 1). In brief, Plaintiff allegedly incurred a personal injury due to these officials "neglecting to give full faith and credit to the public record filing at the Marion County Recorder's Office" concerning Plaintiff's obligations under the aforesaid criminal conviction against him in the Southern District of Indiana, and failing to recognize "evidence that all federal obligations of the United States against [Plaintiff are] satisfied and discharged of record." Compl. 9 (Ex. 1).

In addition, the Complaint alleges that, on February 20, 2013, the Secretary of the Treasury accepted "unconditionally and tacitly" the assignment of that Invoice for setoff against Plaintiff's "federal obligations." Compl. ¶¶ 4–8. The assignment for setoff will "result in the discharge of [those] federal obligations owing to [the United States Government] by [the] Plaintiff" and debts stemming from Plaintiff's federal criminal conviction. Compl. ¶¶ 6–7. Because the Department of the Treasury was required by the thirty-one day time period to fulfill its obligations, but failed to act within that time period, its failure to do so caused Plaintiff "irreparable harm." Compl. ¶¶ 10–11.

On November 12, 2013, Plaintiff filed a Motion For Stay until the arbitration terms of the assignment agreement were complete, and a copy of a Request For Admissions. On December 27, 2013, Plaintiff filed a Notice Of Default and a Motion For Claim To Enforce Arbitration, asserting that the Government's non-response evidenced consent to this court's subject matter jurisdiction. On January 3, 2014, Plaintiff filed a Second Motion To Stay. On December 2, 2013, the Government filed a Motion For Summary Dismissal.

On February 7, 2014, Plaintiff filed a Response. On February 18, 2014, the Government filed a Reply.

On March 4, 2014, Plaintiff filed a "Notice Of Noncompliance, RCFC 7.2(b)(2) And Claim To Strike RCFC 12(f) Defendant's Reply."

---

[4] Plaintiff lists the same four tortfeasors in his claim against the Government in all of the Complaint Exhibit documents, except for a December 7, 2012 letter to the United States Department of Justice including a "Tortfeasor Information Schedule" listing eighteen individuals, among which were the four "tortfeasors" listed in other documents. *Compare* Compl. 7, 8, 17–18 (Ex. 1), *with* Compl. 19 (Ex. 1).

## II.    DISCUSSION.

### A.    Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

Therefore, to pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act . . . ."); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) ("The Tucker Act . . . does not create a substantive cause of action; . . . a plaintiff must identify a separate source of substantive law that creates the right to money damages. . . . [T]hat source must be 'money-mandating.'"). Specifically, a plaintiff must demonstrate that the source of substantive law "can fairly be interpreted as mandating compensation by the Federal Government." *United States v. Mitchell*, 463 U.S. 206, 216 (1983) (quoting *Testan*, 424 U.S. at 400). The plaintiff also bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

In addition, if the court determines at any point in the proceedings that it lacks subject matter jurisdiction, the action must be dismissed. *See* RCFC 12(h)(3). Jurisdiction is a threshold matter for the court to decide. *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1365 (Fed. Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("We have an obligation to assure ourselves of our jurisdiction before considering the merits[.]")).

### B.    Standard Of Review For Pro Se Litigants.

The pleadings of a *pro se* plaintiff are held to a less rigorous standard than those of litigants represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers"). It has been the tradition of the United States Court of Federal Claims to examine the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 412 F.2d 1285, 1292 (Ct. Cl. 1969); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed." (internal quotation omitted)). Nevertheless, while the court may excuse ambiguities

4

in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

### C.      Standard Of Review For A Motion To Dismiss Pursuant To RCFC 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . . is properly raised by a [Rule] 12(b)(1) motion." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) (allowing a party to assert, by motion, "lack of subject-matter jurisdiction"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations [of the complaint] to be true and to draw all reasonable inferences in plaintiff's favor." *Henke*, 60 F.3d at 797.

### D.      Standard Of Review For A Motion To Dismiss Pursuant To RCFC 12(b)(6).

A challenge to the United States Court of Federal Claims' "[ability] to exercise its general power with regard to the facts peculiar to the specific claim . . . . is raised by a [Rule] 12(b)(6) motion[.]" *Palmer*, 168 F.3d at 1313; *see also* RCFC 12(b)(6) (allowing a party to assert, by motion, "failure to state a claim upon which relief can be granted"). When considering whether to dismiss an action for failure to state a claim, the court must assess whether the complaint "allege[s] facts 'plausibly suggesting (not merely consistent with)' a show of entitlement to relief." *Bank of Guam v. United States*, 578 F.3d 1318, 1326 (Fed. Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In determining factual plausibility, the court engages in "context-specific analysis" that draws upon "'its judicial experience and common sense.'" *Twombly*, 550 U.S. at 679.

As a general matter, the court reviews the facts in a favorable light to the plaintiff. *See Bank of Guam*, 578 F.3d at 1326. Nevertheless, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 545. *But see Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions."). Thereafter, "if 'it appears beyond doubt that [plaintiff] can prove no set of facts in support of [its] claim which would entitle [it] to relief'" then this court should dismiss the action. *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 654 (1999).

### E.      The Court's Resolution Of The Government's December 2, 2013 Motion For Summary Dismissal.

#### 1.      The United States Court Of Federal Claims Does Not Have Subject Matter Jurisdiction To Adjudicate Tort Claims Or Claims Against Individual Government Officials.

As the Complaint evidences, several of the alleged claims sound in tort. The United States Court of Federal Claims does not have jurisdiction over these claims. *See* 28 U.S.C. §

1491(a)(1) (2006) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States . . . for liquidated or unliquidated damages in cases not sounding in tort."); *see also Fast Horse v. United States*, 101 Fed. Cl. 544, 547 (2011) ("[T]ort claims fall outside of this [c]ourt's jurisdiction.").

In addition, other claims are asserted against Government officials in their individual roles. The United States Court of Federal Claims does not have jurisdiction over these claims. *See* 28 U.S.C. § 1491 ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against *the United States*[.]" (emphasis added)); *see also Fast Horse*, 101 Fed. Cl. at 547 ("[T]he Tucker Act grants the [c]ourt jurisdiction over claims against the 'United States,' not claims against the United States' individual officers." (citing *Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997))).

## 2. The September 30, 2013 Complaint Fails To Allege A Breach Of A Government Contract.

Plaintiff incorrectly assumes that the court has recognized that he has established a claim upon which relief may be granted by allowing him leave to proceed *in forma pauperis*. In doing so, the court did not recognize that Plaintiff stated a good-faith cognizable claim upon which relief may be granted, but only that Plaintiff showed good cause for the court to waive filing fees. *Compare* RCFC 12(b)(6), *with* 28 U.S.C. § 1915.

As to the merits, "[a]n implied-in-fact contract with the government requires proof of (1) mutuality of intent, (2) consideration, (3) an unambiguous offer and acceptance, and (4) actual authority on the part of the government's representative to bind the government in contract." *Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012) (quoting *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2009)). The party alleging a contract has the burden of demonstrating these elements. *See Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1434 (Fed. Cir. 1998) (determining that a government contractor failed to demonstrate the elements of a contract to modify a construction schedule). The Tucker Act authorizes the court to "render judgment upon . . . any express or implied contract with the United States[.]" 28 U.S.C. § 1491(a). But "jurisdiction under this provision requires . . . a non-frivolous *allegation* of a contract with the [G]overnment." *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1353 (Fed. Cir. 2011) (emphasis in original). At a minimum, "there needs to be something more than a cloud of evidence that could be consistent with a contract to prove a contract and enforceable contract rights. . . . [T]here must still be a clear indication of intent to contract and the other requirements for concluding that a contract was formed." *D & N Bank v. United States*, 331 F.3d 1374, 1377–78 (Fed. Cir. 2003).

The Complaint does not allege the necessary offer and acceptance because all communications are from Plaintiff to the Government. *See* RESTATEMENT (SECOND) OF CONTRACTS § 22(1) ("The manifestation of mutual assent to an exchange ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party or parties."). At no point did the Government respond, let alone accept, the alleged terms proposed. Moreover, an assignment that is signed by only one party is not a bilateral contract and the Government's failure to respond does not create a binding contract. *See Harbert/Lummus*

*Agrifuels Projects*, 142 F.3d at 1433–34 ("In the absence of either actual or constructive knowledge . . . the [receiving party's] silence cannot be a ratification[.]").

The Complaint also must allege consideration "in the form of a bargained-for exchange . . . that the promisee's expectation of performance is reasonable, and not disingenuous reliance on the words of a non-serious and unwilling promisor." *Howell v. United States*, 51 Fed. Cl. 516, 521 (2002) (reviewing the definition of "consideration" in the context of indefinite-quantity contracts regarding maintenance of federal properties). Here, Plaintiff created the September 25, 2012 Invoice, but the Complaint alleges only an agreement by which the alleged "tortfeasors" were found to owe Plaintiff money. Sending an "Invoice" to the alleged "tortfeasors" or anyone else, is not consideration for a "setoff." *See Applied Cos. v. United States*, 37 Fed. Cl. 749, 760 & n.6 (1997) (determining that "[t]he flaw in plaintiff's argument . . . is that plaintiff has not established that at the time the government properly exercised its setoff rights plaintiff had . . . a valid setoff," because "plaintiff has not established at this time a viable debt for setoff purposes and the government has not acknowledged any such debt"), *aff'd*, 144 F.3d 1470 (Fed. Cir. 1998).

Plaintiff incorrectly assumes that the Complaint properly alleges a valid contract by the "binding legal effect" of the Government's lack of response to his November 12, 2013 Request for Admissions. But, requests for admissions are meant to "establish facts about which there is no real dispute in order to expedite litigation and save the time and money that would otherwise be spent on unnecessary discovery and proof of facts at trial." *JZ Buckingham Invs. LLC v. United States*, 77 Fed. Cl. 37, 44 (2007). Admissions are limited to facts, application of law to fact, opinions about either, or the genuine nature of documents. *See* RCFC 36(a)(1)(A)–(B). As such, the Government's lack of response to the November 12, 2013 Request For Admissions has no binding legal effect and does not establish the court's jurisdiction over a contract dispute. *See Burnside-Ott Aviation Training Ctr. v. Dalton*, 107 F.3d 854, 858 (Fed. Cir. 1997) ("[P]arties cannot by consent confer subject matter jurisdiction on the [court.]").

For these reasons, the court does not have jurisdiction to adjudicate the breach of contract claims in the September 30, 2013 Complaint.

### 3. The September 30, 2013 Complaint Does Not Allege A Setoff For An Illegal Exaction

Plaintiff also contends that the basis for his claim is founded on "31 USCS [sic] § 3701 et seq." Pl. Resp. ¶¶ 1–10. In accordance with the standard of review for *pro se* claims, this court liberally construes Plaintiff's reliance on this statutory section to include all subchapters under Chapter 37 of Title 31, and to specifically include reference to the Setoff Act under Section 3728 that allows the Government to withhold paying part of a judgment to satisfy a creditor's debts to the Government. This statute has been applied in prisoner tort cases. *See, e.g., United States v. Cohen*, 389 F.2d 689 (5th Cir. 1967) (applying the Government's right to set off against monetary damages awarded to a prisoner based on a Federal Tort Claims Act judgment in his favor). Here, however, there is no judgment in Plaintiff's favor against the United States regarding his tort allegations. Since there is no financial debt for the Government to set off against Plaintiff's debt obligations stemming from his criminal conviction, Section 3728 is inapplicable.

Likewise, the Complaint fails to allege an illegal exaction claim. *See Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) ("To invoke Tucker Act jurisdiction over an illegal exaction claim, a claimant must demonstrate that the statute or provision causing the exaction itself provides, either expressly or by 'necessary implication,' that 'the remedy for its violation entails a return of money unlawfully exacted.' (quoting *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed. Cir. 2000))).

## III.   CONCLUSION.

For these reasons, the Government's December 2, 2013 Motion For Summary Dismissal is granted. *See* RCFC 12(b)(1), 12(b)(6).[5] Accordingly, the Clerk of Court is directed to dismiss the September 30, 2013 Complaint.

In addition to the September 30, 2013 Complaint, Plaintiff has filed numerous complaints in this court and others, including one with markedly similar facts involving the Secretary of the Treasury.[6] Based on a review of Plaintiff's claims and correspondence, the court finds that Plaintiff's contacts with this court reflect "indicia of frivolousness and harassment," specifically in both the "number and content of filings" and their lack of merit. *In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988); *see also Hemphill v. Kimberly-Clark Corp.*, 374 Fed. App'x 41 (Fed. Cir. 2010) (following the guidelines discussed in *In re Powell* concerning anti-filing injunctions for *pro se* litigants).

Pursuant to Rule 11(c)(3) of the Rules of the United States Court of Federal Claims, Plaintiff has thirty (30) days to show cause why the court should not issue an anti-filing injunction. *See also In re Powell*, 851 F.2d at 433 (suggesting that a "district court should

---

[5] Finally, the claims in the September 30, 2013 Complaint are baseless. "[A] court may dismiss a claim as factually frivolous 'only if the facts alleged are "clearly baseless." *Spencer v. United States*, 98 Fed. Cl. 349, 356 (2011) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)); *see also Moden v. United States*, 404 F.3d 1335, 1341–42 (Fed. Cir. 2005) (interpreting "frivolous" as "insubstantial, implausible, foreclosed by prior decisions, or otherwise completely devoid of merit as not to involve a federal controversy"); *Young v. United States*, 88 Fed. Cl. 283, 291–92 (2009) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them.").

[6] Plaintiff has initiated several other *pro se* actions. *See Taylor v. Oliver*, No. 13-328, 2013 WL 5177113 (S.D. Ind. Sept. 13, 2013) (summary dismissal of habeas petition); *Taylor v. U.S. Treasury*, No. 13-1047, 2013 WL 5303255 (D.D.C. July 10, 2013) (dismissing for frivolity); *Taylor v. United States*, No. 13-112C, 2013 WL 638885 (Fed. Cl. Feb. 19, 2013), *reconsideration denied*, 2013 WL 1094818 (Fed. Cl. Mar. 18, 2013) (dismissing plaintiff's complaint for lack of jurisdiction and failure to state a claim upon which relief may be granted); *Taylor v. Patton*, No. 06-169, 2007 WL 496663 (E.D. Ky. Feb. 9, 2007) (dismissing habeas corpus petition, with prejudice); *Taylor v. Tinder*, No. 06-90 (E.D. Ky. filed June 2, 2006, dismissed July 24, 2006) (dismissing habeas corpus petition, without prejudice).

consider issuing an order to show cause" before issuing an anti-filing injunction).  If Plaintiff does not do so, the Clerk will be further directed to accept no other actions or filings by Ralph W. Taylor, without an Order of the Chief Judge of the United States Court of Federal Claims.  *See* RCFC Rule 11(b) (barring the filing of unwarranted claims).

In the interim, the Clerk's Office shall reject any additional complaints from Plaintiff unless accompanied by the court's required filing fee.

**IT IS SO ORDERED.**

_____
SUSAN G. BRADEN
Judge